## CORCORAN *v.* RENEHAN.

---

ACCOUNTING; GUARDIAN AND WARD; VOUCHERS, NECESSITY FOR.

1. In stating the account of a guardian or other person acting in a similar fiduciary capacity, while his testimony may not in a given case be sufficient to prove an item, or a number of items, for which he claims credit, and such item or items may be disallowed for that or any other sufficient reason, it is error to exclude any such item for the sole reason that there is no voucher in support of it, if the claimant of the credit has sworn to the disbursement, and the item is in itself not improper to be allowed.

2. The probate court *held* to have erred in charging a guardian in a statement of her account, with interest between certain dates on a sum of money in excess of the sum shown by the account to have been in her hands.

3. A guardian should not be charged with interest on money in his hands belonging to his ward from a given date, unless it appear that at that time he converted the money to his own use, as it is not always practicable, or even possible, to invest money as soon as it comes into one's hands. A reasonable time should be allowed for such investment.

No. 1467. Submitted November 3, 1904. Decided December 13, 1904.

HEARING on an appeal by a guardian from an order of the Supreme Court of the District of Columbia, sitting as a probate court, stating her account and directing her to pay over to her successor a specified sum of money. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. C. A. Brandenburg, Mr. E. C. Brandenburg, Mr. F. W. Brandenburg,* and *Mr. Rossa F. Downing* for the appellant.

*Mr. W. J. Lambert* and *Mr. D. W. Baker* for the appellee.

Mr. Justice Morris delivered the opinion of the Court:

This cause involves an accounting by a guardian in the probate branch of the supreme court of the District, and comes to us by appeal by the guardian from a decretal order of that court which settled her accounts by the requirement that she should pay over to the appellee, her successor as guardian, a certain specified sum of money.

On September 3, 1897, the appellant, Katherine M. Corcoran, was appointed by the probate court as guardian of two minor children, apparently her nieces, whose father had died a few days before, and of whom the older was about ten and the younger about eight years of age.   On November 11, 1898, she filed her first account as such guardian, wherein she showed a balance in her hands of $4,877.29 in cash, and chattels to the value of $36.25; and the account was approved.   She was allowed a commission of 10 per centum upon the income of the estate that had been received by her, and this allowance left in her hands the principal sum of $4,655.06, upon which at that time she neither claimed nor received any commission.   After that she filed no account until the present proceeding was instituted in July of 1902.   But on April 10, 1899, which was about five months after the filing of her account, she procured an order to be passed by the probate court upon her petition, in which she was allowed the sum of $30 for each month for the support, maintenance, and education of each one of her two wards, or $60 for both.

It seems that the children derived by inheritance from their father the ownership of two pieces of real estate, and from these the guardian collected the rents through the medium of agents. On April 14, 1899, she was authorized by the court to purchase for them another piece of real estate for the sum of $2,000, and this she did, and during her guardianship received the rents of it. All three pieces yet remain the property of the children, and are

in the possession and under the control of the appellee, the substituted guardian.

On July 10, 1902, upon the petition of the minor children by next friend, the appellant was removed from her guardianship, and directed to settle her accounts, and the cause was referred to the register of wills, then in office, as special auditor for such settlement. The record shows that there was very great difficulty in taking these accounts, inasmuch as the appellant presented vouchers only for a part of the credits which she claimed, but for a large part had no vouchers and no memoranda, although she testified to the disbursement of all of them for the benefit of the children. She seems to have kept some memoranda, but of a very unsatisfactory character. After taking considerable testimony, mainly that of the appellant herself, the special auditor filed his report on March 31, 1903, and found the sum of $4,450.38 to be due by her to the estate of her wards as of the date of April 26, 1903.

Exceptions were duly filed by the appellant to several of the findings of the special auditor. These exceptions were eighteen in number. Two of them were allowed by the probate court; sixteen were overruled. Thereupon the court rendered a decree requiring the appellant to pay to the appellee, the substituted guardian, the sum of $4,808.01, which included principal and interest and a fee of $350 to the special auditor, besides the sum of $18.95 for costs to the register of wills.

From this decree the appellant has appealed to this court.

The severe animadversion of the justice who held the probate court in this case, as well as that of the special auditor, upon the conduct of the appellant, would seem to be not unwarranted by the record. Her testimony certainly is most unsatisfactory, and her course throughout does not present her in the most favorable light as a careful guardian of the financial interests of the children committed to her care. It is sought to excuse her — and there is much plausibility in the excuse — that she was ill and in bad health at the time at which she gave her testimony; that she is an ignorant woman,—at all events ignorant of the proper methods for the conduct of business; and that,

after the filing of her first account, and especially after the allowance to her of $30 a month for the support, maintenance, and education of each of the children, she did not deem it necessary to keep any further account.    Into considerations of this kind, of course, we cannot enter in this court.    Entirely apart from and independently of them, however, we think there has been grave error in the statement of the appellant's account, for which it should be revised and restated.    This revision and restatement we cannot make in this court, nor can we pass upon the contested items in detail.    That is the function of the auditor, subject to the superintendence of the court.    What we propose to do here is simply to indicate in general the features wherein we think the accounting has been erroneous.

1. In the first place, it seems that items aggregating the sum of $1,235.49 have been wholly rejected because the appellant had no vouchers to show for their disbursement by her other than her own testimony.    This undoubtedly was error. Vouchers, which here generally mean receipts, are proper to be filed by guardians and others as prima facie evidence of their disbursements.    But the production of receipts is not the only method by which the payment of money is proved.    The person to whom it was paid, or anyone who saw it paid, or who is by his knowledge competent to show such payment, may be personally produced and show the payment by his oral testimony. The person who makes the payment and claims the credit there for is competent to prove the fact by his own oath, without the production of any receipt or voucher.    This is elementary law, but it seems to have been disregarded in this instance under the disgust naturally engendered in the mind of the special auditor at the extremely unsatisfactory character of the appellant's testimony.    We do not mean, of course, to hold that a guardian's testimony in a case like this is to be taken as conclusive of the fact of his own disbursements, or even as prima facie proof of any special item.    What we hold is that no item of credit claimed by a guardian, or by any other person acting in a similar fiduciary capacity, and certainly no wholesale list of items, as in this case, should be excluded from consideration for the sole

reason that they are not accompanied by vouchers. The testimony of a party may not be sufficient in a given case to prove an item, or a number of items, and they may be disallowed for that or for any other sufficient reason. But it is error to exclude them for the sole reason that there are no vouchers in support of them, if the claimant of the credit has sworn to the disbursement, and the item is in itself not improper to be allowed.

In the matter of guardianship, especially, there are generally a great many disbursements which admit of no voucher, where a receipt is rarely or never given. Clothing is often bought without the passing of any receipt, and there are numerous things in ordinary life which, in the nature of things, cannot be evidenced by writing. To require that disbursements, therefore, should always be so evidenced would be unreasonable, although it cannot be too earnestly impressed upon guardians that they should be careful to keep an account of their expenditures, even to the minutest detail. But it is because it is impracticable in ordinary life to keep a detailed account of all small items of expenditure that an allowance of a lump sum for maintenance of their wards is often made to guardians, as it was made in this case; and the allowance so made will generally serve as a fair limit within which expenditures, with or without voucher, may be allowed. Again, however, we are not to be understood as holding that vouchers should not be required of guardians in all cases in which vouchers can practically be had.

There is another consideration which we should not ignore in this connection. Counsel appeared on both sides in this case; and it would seem that several, perhaps a great many, of the items of account claimed by the appellant met with no objection. There is controversy between counsel as to what their agreements and stipulations in this regard mean. We do not undertake to determine what they do mean. But they show the impropriety of excluding all these items from consideration. Plainly there are some of them that should have been allowed. We will not undertake to determine which or how many. A new audit must determine this.

2. In the second place, the court below, by its decree, charged

the appellant with having in her hands on November 11, 1898, the sum of $3,000, and charged her with interest on that amount from that date to the date of the decree, amounting to $970. This we are compelled to regard as error. As shown by her first account, the appellant had in her hands on November 11, 1898, the sum of $4,877.29 in money, reduced by the allowance of commissions to her on the income to $4,655.06; and, for present purposes, this sum is now to be regarded as further reduced to $4,184.55 by the allowance which has actually been made to her by the court of commissions on the principal sum, amounting to $465.51. As on April 14, 1899, she was authorized to expend $2,000 on the purchase of a piece of real estate, and she actually did purchase such real estate for the sum of $2,081.21, no objection being made in the slight excess of the cost, if she was chargeable at all with interest, about which we need express no opinion, as a new audit must be had in any event, she was chargeable only with interest on $2,103.34, and not on $3,000, from and after April 14, 1889. Moreover, she should not in any event have been charged with interest from November 11, 1898, unless it appears that at that time she had converted the money to her own use, since it is not always practicable, or even possible, to invest money at once, as soon as it comes into a person's hands. A reasonable time should have been allowed for such investment.

3. There are questions raised in regard to taxes paid for the year ending June 30, 1892, for which the appellant was not allowed credit,— in regard to an item of $111.50 charged against the appellant from the books of a real-estate agent, without any opportunity to either side to explain it, and in regard to the refusal of commissions to the appellant upon the present accounting. As to these we intimate no opinion at present. Some at least, if not all, of these matters can be, and ought to be, cleared up on a new audit, and removed from the domain of controversy.

For the reasons indicated, the decree appealed from must be reversed, with costs; and the cause will be remanded to the

Supreme Court of the District of Columbia, with directions to have a new accounting therein. And it is so ordered.

*Reversed.*